FILED
SUPERIOR COURT
OF GUAM

2019 JUN 24 PM 2: 24

CLERK OF COURT

BY: _____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| ISLAND EYE CENTER, INC. dba ISLAND EYE AND RETINA CENTER,<br><br>                   Plaintiff,<br><br>       vs.<br><br>PETER N. LOMBARD, M.D., ADVANCED EYECARE, LLC dba LOMBARD HEALTH, DESIREE NEDEDOG, JOHN and JANE DOES 1 through 20,<br><br>     Defendants. | Case No. CV0026-17<br><br>**DECISION AND ORDER** |

## INTRODUCTION

Defendants have moved for summary judgment in this case of misappropriation of trade secrets, breach of contract, and other related claims. This matter is before the Honorable Michael J. Bordallo. Island Eye Center, Inc. dba Island Eye and Retina Center ("Island Eye") is represented by Daniel J. Berman, Esq. of Berman O'Connor & Mann. Peter N. Lombard, M.D., Advanced Eyecare, LLC dba Lombard Health, Desiree Nededog, John and Jane Does 1 through 20 ("Defendants" or if referring to Peter N. Lombard himself, "Lombard") are represented by attorney Delia Lujan Wolff of Lujan & Wolff, LLP. Having considered the arguments and the applicable law, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment.

## BACKGROUND

This matter arises out of Plaintiff's Motion for Summary Judgment ("Motion"), filed Jan. 11, 2019. Defendant filed an opposition ("Opposition") on Feb. 15, 2019. Defendant filed a reply to the Opposition on Mar. 12, 2019. The Court then took the matter under advisement.

## FACTS

1. Defendant Lombard, an eye doctor, came to Guam on or about June 2010 to work full time for the U.S. Navy. While here, he began moonlighting as a licensed ophthalmologist for Island Eye, an eye clinic located in Tamuning, Guam.

2. Lombard entered into a services and employment contract ("Employment Contract") with Island Eye on Aug. 9, 2010 and by extension on Nov. 17, 2011. Under the Employment Contract, Lombard's final day of employment with Island Eye would be Feb. 28, 2013.

3. The Employment Contract permitted Lombard to "provide each year two weeks of clinic coverage at St. Lucy's Vision Center in a manner that does not interfere with his duties at [Island Eye]." First Am. Compl. And Demand for a Jury Trial, Ex. A § 16.

4. St. Lucy's Vision Center refers to St. Lucy's Eye Clinic ("St. Lucy's"), located in the Guam Medical Plaza in Tamuning, Guam. St. Lucy's employs one full-time general ophthalmologist named Dr. Marjorie DeBenedictis ("Dr. DeBenedictis").

5. The Employment Contract contained a non-solicitation provision ("Non-Solicitation Clause") which stated:

> In the event that at some future time, the Surgeon enters into the practice of Opthalmology [sic] or other eye care services on Guam separate from Island Eye Center, he agrees to refrain from direct solicitation of Island Eye Center patients or staff. This includes phone calls, direct mail, or other person-to-person communication. This restriction does not expire.

1st Lombard Decl. Ex. B § 20.

6. The Employment Contract also contained a trade secrets provision which stated: "The Surgeon agrees that all Island Eye Center patient lists, paperwork, and other information or methods generally regarded as 'trade secrets' will be held in confidence and will not be shared with outside parties." Id. at § 23.

7. On Feb. 8, 2012, Lombard sent an email to the CEO of Island Eye, Dr. Anthony J. Smith, in which Lombard suggested that he would soon end his time at Island Eye, perhaps in either March 2012 or May 2012. 1st Lombard Decl. Ex. D.

8. Although no evidence of any response to that email has been entered, the last time Lombard saw patients or performed services for Island Eye was on May 12, 2012, and he received his last Island Eye paycheck on Sep. 25, 2012.

9. Although Lombard saw his last patient with Island Eye in May 2012 and performed no work for Island Eye after that time, Island Eye argues that Lombard was an Island Eye employee until at least Feb. 28, 2013, the technical end date of the Employment Contract.

10. Island Eye argues that Lombard was deliberately ambiguous about when he planned to leave the clinic and that Lombard signaled he may still have interest in employment with Island Eye up to and perhaps exceeding Feb. 28, 2013. Island Eye bases this claim on Lombard's statement in two emails, the email Lombard sent to Dr. Anthony J. Smith on Feb. 8, 2012 and another email Lombard sent Dr. Smith on Feb. 10, 2013. As stated earlier, in the Feb. 8, 2012 email, Lombard suggested that he should leave Island Eye in March or May 2012. In the Feb. 10, 2013 email, Lombard informed Dr. Smith that he "started negotiating to start moonlighting again a couple nights a week," but his negotiations were with other clinics, not Island Eye. Anthony J. Smith Decl. Ex. C. As

he stated to Dr. Smith, "I thought about reaching out to you again to start something up, but I just don't think Island Eye was a good fit for me." Id. Island Eye argues that these emails make it unclear whether Lombard wished to continue working with Island Eye. Also, Island Eye states, Lombard's intentions were unclear because "[h]e refused to resign—but refused to renew his contract as well." Opp'n at 3.

11. Sometime in the spring of 2015, Lombard opened the doors of his own eye clinic, Advanced Eyecare, dba Lombard Health ("Lombard Health"), in Sinajana, Guam. He had filed the paperwork to form it as a limited liability company on Jan. 31, 2013, a month before the Employment Contract technically expired.

12. Around April 28, 2015, Lombard Health hired Defendant Desiree Nededog ("Ms. Nededog"). Ms. Nededog had worked at Island Eye for 10 years and was a LASIK supervisor there when she left to join Lombard Health.

13. On Jan. 17, 2017, Island Eye filed a complaint and two months later on Mar. 20, 2017 filed an amended complaint ("Complaint") against Lombard bringing six causes of action. The Court dismissed one cause of action, and there are now five remaining causes of action: (1) Common Law Misappropriation of Trade Secrets; Unfair Competition; (2) Civil Conspiracy; (3) Breach of Contract: Non-Solicitation; (4) Breach of Fiduciary Duties; and (5) Breach of Covenant of Good Faith and Fair Dealing.

14. On Jan. 11, 2019, Defendants filed the instant Motion, moving the Court to issue summary judgment in the five remaining causes of action. On Feb. 15, 2019, Island Eye filed an Opposition to the Motion. On Mar. 12, 2019, Defendant filed a reply to the Opposition.

15. Island Eye argues in the Complaint that Defendants engaged in unfair competition by misappropriating Island Eye's trade secrets. Later, in the Opposition, Island Eye argues that Defendants also engaged in unfair competition by misappropriating Island Eye's property that included its business model and employee training. Island Eye also claims in the Opposition that it is unfair competition to "hijack a company by taking away its at-will employees." Opp'n at 14.

16. Island Eye stated that it has "a long list of secrets," (Opp'n at 10). In the Complaint, Island Eye identified several of these items that it believes to be trade secrets and alleged that Defendants misappropriated them. The purported trade secrets include, "individualized and special techniques to further its medical care for patients and advance its unique nature" and "a client list, procedures and unique treatment protocols." First Am. Compl. And Demand for Trial by Jury 4. Later in the Complaint, Island Eye listed additional trade secrets and alleged or implied that Defendants misappropriated them. They include, "medical protocols and procedures, pricing, insurance relationships, LASIK treatment, strategies, customer lists, customer information, insurance deductible breakdowns, financial information and other sensitive and confidential information relating to Island Eye's unique services, patients, and applicable health insurance and business." Id. at 10. In the Opposition, Island Eye identified or otherwise implied that still more items are trade secrets and alleges or suggests that Defendants misappropriated them. These include, "various types of protocols, procedures, and information"; "surgical and nursing procedures, intake procedures, and other procedures and protocols—learned over the past twenty (20) years of business"; "all contracts of Island Eye with its medical doctors"; "[t]he business model of Island Eye is a unique operation created over more than a period of

20 continuous years of handwritten, manually prepared, medical protocols"; "sole provider of LASIK on Guam"; "delivering prices negotiated at different rates with different parties, all unknown to other medical clinics"; "payroll details inside of Island Eye"; "Island Eye's business model of salary rates, business practices, pricing data, [and] methods and techniques of operation"; and "LASIKS [sic] procedures and protocols." Id. at 10, 11.

17. Island Eye claims that much or most of what it calls trade secrets are written in a binder that is stored under lock and key. Some trade secrets Island Eye accuses Lombard of misappropriating are not written and are not stored digitally or in any physical location but rather exist as the learning and knowledge taken by employees that left Island Eye for Lombard Health.

18. Island Eye's principal employees, including all medical doctors, sign nondisclosure agreements as to trade secrets, including some trade secrets that cannot be contained solely within the binder.

19. Island Eye accuses Lombard of raiding Island Eye for employees to establish his own clinic, in violation of the Non-Solicitation Clause in the Employment Contract. Island Eye stated that of the approximately ten employees working at Island Eye between 2015 and 2016, Lombard and Ms. Nededog contacted up to ten of them and hired five.

20. Island Eye also accuses Lombard of violating standard contractual duties of employment, such as good faith and fair dealing, the duty of loyalty and "the standard duties owed under tort law (e.g. duty to avoid theft or unfair competition)." Opp'n at 3.

21. To reiterate, Island Eye contends that regardless of whether Lombard actually performed work or saw patients for Island Eye between May 2012 and Feb. 28, 2013,

he was still under contract and was therefore an Island Eye employee until Feb. 28, 2013.

22. Island Eye asserts that while Lombard was employed at Island Eye, he took direct actions to compete with Island Eye. As evidence, Island Eye showed that Lombard filed paperwork to create Lombard Health, LLC on Jan. 31, 2013 and was issued a business license for the new company on Feb. 8, 2013.

23. In addition, Island Eye states that Lombard clandestinely formed a competing corporation and either worked for a competitor or independently contracted with one, St. Lucy's, in the name of his competing corporation while under contract with Island Eye. Again, the end date of his Island Eye contract was Feb. 28, 2013.

24. As evidence that Lombard began working for St. Lucy's before Feb. 28, 2013, Island Eye submitted this data table as an exhibit:

| DATE PAID | | AMOUNT PAID |
|-----------|---|-------------|
| 3/1/2013 | | $ 659.88 |
| 3/15/2013 | | $ 112.80 |
| 3/21/2013 | | $ 119.42 |
| 3/29/2013 | | $ 305.40 |
| 4/19/2013 | | $ 893.34 |
| 5/3/2013 | | $ 131.54 |
| 5/9/2013 | | $ 484.26 |
| 5/17/2013 | | $ 735.48 |
| 5/24/2013 | | $ 1,583.18 |
| 5/31/2013 | | $ 272.44 |

$ 5,297.74

Anthony J. Smith Decl. Ex. E.

25. The table above is the full extent of the exhibit exactly as it appears in the filing. The table bears no accompanying title, names, identifications, signatures, or other labels. It

is simply the bare table above, used to reinforce the declaration in Dr. Smith's statement that "[Lombard] began earning income in February 2013 working for another eye clinic; that is, St. Lucy's Clinic." Smith Decl. at ¶ 14. In a later filing, Island Eye stated that Dr. DeBenedictis at St. Lucy's produced the table. Decl. of Pl.'s Counsel Re: Defs.' Request for Delay, Ex. 4 p. 7 (Apr. 16, 2019). Island Eye stated that the table is "a limited statement of Gross Income paid to Lombard and/or Lombard Health for medical services for the period between January 2013 through May 2013 equal to $5,297.84." Id.

26. Island Eye also produced a form 1099-Misc from 2013 demonstrating that during that year, Dr. DeBenedictis paid Lombard $52,164.35. Smith Decl. Ex. F. The 1099-Misc does not clarify whether Lombard earned the money before or after Feb. 28, 2013.

27. Island Eye stated in its Opposition that "[i]t is impossible to know just how much [Lombard] worked for a competitor because Lombard refuses to produce the relevant requested discovery." Opp'n at 16. Island Eye has sought from Defendants discovery of their Gross Receipt Tax ("GRT") summaries from 2013 to determine how much Lombard may have worked at St. Lucy's during 2013. Decl. of Pl.'s Counsel Re: Defs.' Request for Delay, Ex. 2.

28. Although the cause of action in the Complaint stated that Lombard violated his fiduciary duty of loyalty, it stated nothing about his work for St. Lucy's and did not accuse him of working there in violation of the Employment Contract. Instead, the cause of action about breach of duty of loyalty in the Complaint referred only to solicitation of employees and stealing trade secrets. Only in the Opposition did Island Eye first raise the issue of Lombard working for St. Lucy's in violation of his duty of loyalty.

29. Lombard admitted that he began working at St. Lucy's on Feb. 15, 2013, thirteen days before the technical end of his contract. Lombard Decl. ¶ 4. In the Opposition, Island Eye stated that a genuine issue of material fact exists as to whether Lombard violated his fiduciary duty of loyalty by working for St. Lucy's while still under contract with Island Eye. Island Eye has accused Lombard of working for St. Lucy's while still employed by Island Eye in 2013 but without specifying the amount of time they believe he worked there, such as two weeks, three weeks, or more. As stated earlier, the Employment Contract permitted Lombard to work up to two weeks per year with St. Lucy's, so long as this work did not interfere with his work at Island Eye.

30. In their defense, Defendants state that during the time Lombard and Ms. Nededog were employed at Island Eye, neither of them ever appropriated or used, or attempted to appropriate or use, Island Eye property, including any trade secrets, to establish Lombard Health or a competing LASIK center. They state that they also did not appropriate or use or attempt to appropriate or use Island Eye property for anything other than Island Eye's benefit.

31. Defendants state that after Lombard and Ms. Nededog stopped working at Island Eye, neither they nor Lombard Health ever acquired, appropriated, or used, or attempted to acquire, appropriate, or use Island Eye property, including any trade secrets.

32. Defendants further state that neither Lombard nor Ms. Nededog ever had discussions or any agreement with each other, or anyone from Lombard Health, or anyone else, about taking Island Eye property, including trade secrets, for the purpose of benefitting anyone or anything other than Island Eye.

33. Lombard and Ms. Nededog also claim that they never had discussions or any agreements with each other or anyone from Lombard Health, or anyone else, about

soliciting Island Eye employees to work at Lombard Health. Lombard claims that all employees that he hired from Island Eye first reached out to him, including Ms. Nededog. He claims he did not seek any of them out.

34. Defendants also claim that no Island Eye employees were ever hired or solicited for employment with Lombard Health for the purpose of obtaining Island Eye property, including any trade secrets.

35. To reiterate, Plaintiff has brought five remaining causes of action: (1) Common Law Misappropriation of Trade Secrets; Unfair Competition; (2) Civil Conspiracy; (3) Breach of Contract: Non-Solicitation; (4) Breach of Fiduciary Duties; (5) Breach of Covenant of Good Faith and Fair Dealing.

36. Defendants have moved the Court to grant summary judgment on these five remaining causes of action.

37. This matter is now before the Court.

**ISSUE**

1. Whether there is a genuine dispute as to material fact regarding Defendants' alleged misappropriation of trade secrets and unfair competition.

2. Whether there is a genuine dispute as to material fact regarding Defendants' alleged civil conspiracy.

3. Whether there is a genuine dispute as to material fact regarding Defendants' alleged breach of contract by solicitation of Island Eye employees.

4. Whether there is a genuine dispute as to material fact regarding Defendants' alleged breach of fiduciary duties.

5. Whether there is a genuine dispute as to material fact regarding Defendants' alleged breach of covenant of good faith and fair dealing.

## DISCUSSION

The Court emphasizes that an overarching framework of this analysis is the settled policy in favor of open competition and employee mobility. See Edwards v. Arthur Andersen LLP, 189 P.3d 285, 290 (Cal. 2008). Cast in this light, and in light of the analysis below, none of Plaintiff's claims against Defendant create genuine issues of material fact, and summary judgment will therefore be granted.

### Principles of Law Associated with Summary Judgment

Summary judgment is regulated by Rule 56 of the Guam Rules of Civil Procedure. Guam R. Civ. P. 56. Summary Judgment is appropriate if the pleadings, deposition, interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Guam R. Civ. P. 56(c); Izuka Corp. v. Kawasho International, (Guam), Inc., 1997 Guam 10 ¶ 7. In addition,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations omitted).

In rendering its decision on a motion for summary judgment, a court must draw inferences and view the evidence in a light most favorable to the non-moving party. Bank of Guam v. Flores, 2004 Guam 25. If, however, the movant can demonstrate that there are no genuine issues of material fact, the non-movant cannot merely rely on allegations contained in the pleading but must produce at least some significant probative evidence to support the pleading. Edwards v. Pacific Financial Corporation, 2000 Guam 27 ¶ 7. Consequently, a

court's "ultimate inquiry is to determine whether the 'specific facts' set by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." Id.

### First Cause of Action: Misappropriation of Trade Secrets; Unfair Competition

Guam case law is relatively quiet on the topic of unfair competition and trade secrets, so the Court looks to other jurisdictions for guidance. A California court of appeal has stated, "Generally the law of unfair competition prohibits former employees from disclosing or misusing an employer's trade secrets and confidential information—even in the absence of contractual restrictions." Loral Corp. v. Moyes, 219 Cal. Rptr. 836, 840 (Ct. App. 1985). Under California law, a plaintiff must establish the following elements to establish the tort of unfair competition: (1) the plaintiff invested substantial time, skill, or money in developing its property; (2) the defendant appropriated and used the property at little or no cost; (3) the defendant's appropriation and use of the property was without authorization or consent by the plaintiff; and (4) the plaintiff can establish that it has been injured by the defendant's conduct. City Solutions, Inc. v. Clear Channel Communications, 365 F.3d 835, 842 (9th Cir. 2004).

Trade secret protection is a branch of unfair competition law. See Balboa Ins. Co. v. Trans Global Equities, 267 Cal. Rptr. 787, 795 (Ct. App. 1990). The Guam Code defines a trade secret as

> the whole or any portion [or] phase of any scientific or technical information, design, process, procedure, formula or improvement which is secret and is not

generally available to the public, and which gives one who uses it an advantage over actual or potential competitors who do not know of or use the trade secret....

9 GCA § 43.10(f). To qualify as a trade secret, generally two standards must be met: (1) the information sought to be deemed a trade secret must be valuable because it is unknown to others, and (2) the owner must make reasonable efforts to keep it secret. See, e.g., Whyte v. Schlage Lock Co., 125 Cal. Rptr. 2d 277, 286 (2002); Courtesy Temp. Serv., Inc. v. Camacho, 272 Cal. Rptr. 352, 357 (Ct. App. 1990). Other trade secret test factors include the extent to which the information is known outside of the owner's business, the extent to which it is known by employees, the amount of effort or money expended by the owner in developing the information, and the ease or difficulty with which the information could be properly acquired or duplicated by others. SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1256 (3d Cir. 1985)

The Seventh Circuit Court of Appeals has stated about trade secret law, "Trade secret law serves to protect standards of commercial morality and encourage invention and innovation while maintaining the public interest in having free and open competition in the manufacture and sale of unpatented goods." PepsiCo, Inc. v. Redmond, 54 F.3d 1262, 1268 (7th Cir. 1995). That court added, "Yet that same law should not prevent workers from pursuing their livelihoods when they leave their current positions." Id. The Ninth Circuit Court of Appeals has stated, "A plaintiff seeking relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist.'" Imax Corp. v. Cinema Techs., Inc., 152 F.3d 1161, 1165 (9th Cir. 1998) (quoting MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 522 (9th Cir.1993). The Ninth Circuit continues, "The plaintiff should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." Id. (quoting Universal Analytics v. MacNeal–Schwendler Corp., 707 F.Supp. 1170, 1177

(C.D.Cal.1989) (emphasis in original).

To state a prima facie claim for trade secret misappropriation, a plaintiff must demonstrate: "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." Agency Solutions.Com, LLC v. TriZetto Grp., Inc., 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011). Also, it is crucial that the information claimed to have been misappropriated be clearly identified. Id. The plaintiff must clearly define what it claims to own, rather than "falling back on vague hand waiving." Id. To accomplish this, "First, the plaintiff must clearly identify what the 'thing' is that is alleged to be a trade secret, and second, the plaintiff must be able to clearly articulate why that 'thing' belongs in the legal category of trade secret." Id.

A federal court in Minnesota has stated, "Trade secret laws are meant to be a shield to preserve the trust in confidential relationships, 'not a sword to be used by employers to retain employees by the threat of rendering them substantially unemployable in the field of their experience.'" Katch, LLC v. Sweetser, 143 F. Supp. 3d 854, 867 (D. Minn. 2015) (quoting E.W. Bliss Co. v. Strutheres-Dunn, Inc., 408 F.2d 1108, 1112-13 (8th Cir. 1969). The court added, "A claim of trade secret misappropriation should not act as an ex post facto covenant not to compete." Id. at 867-868. (quoting Int'l Business Machine Corp. v. Seagate Tech., Inc., 941 F.Supp. 98, 101 (D. Minn. 1992)).

California, along with a growing number of states, has rejected the doctrine of inevitable disclosure. Whyte v. Schlage at 281. This doctrine is the concept that an employer can prevent a former employee from taking a position with a competitor by demonstrating that the new job duties will inevitably cause the employee to rely upon the former employer's trade secrets. Id.

Some courts have found that information related to costs and pricing can be considered trade secrets under certain circumstances. See e.g., Courtesy Temporary Service, Inc. v. Camacho, 222 Cal.App.3d at p. 1288, 272 Cal.Rptr. 352 (billing and markup rates "irrefutably" of commercial value); SI Handling Systems, Inc. v. Heisley, (3d Cir.1985) 753 F.2d 1244, 1260 (cost and pricing information can be trade secrets if based on information that is not readily obtainable by anyone in the industry); Lumex, Inc. v. Highsmith (E.D.N.Y.1996) 919 F.Supp. 624, 628–630 (pricing, costs, and profit margins treated as trade secrets). However, the methods of pricing and bidding must be more than merely "skillful variation[s] of general processes known to the particular trade." Fortna v. Martin, 323 P.2d 146, 149 (1958). For example, pricing as a trade secret might be established upon a showing of evidence that an employer devised a "secret or improved method of making estimates or computing costs." Id. Information such as employee salaries may be kept secret but still not qualify as a trade secret because it has no independent economic value. See GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc., 99 Cal. Rptr. 2d 665, 678 (2000). Still, salary information can be considered confidential information, if not a trade secret. For example, sharing an unpublished list of employee salary information with a competitor for the purpose of facilitating the recruitment of the corporation's personnel would be an improper disclosure of confidential information. See Bancroft-Whitney Co. v. Glen, 411 P.2d 921, 939 (1966).

Analysis

In the instant case, Island Eye has the burden of showing that a trade secret exists, clearly identifying it, describing it in detail so as to separate it from matters of general knowledge in the trade or of special knowledge of people skilled in the trade, demonstrating that Defendant acquired, disclosed or used it through improper means, and establishing that Plaintiff has thereby been damaged. Island Eye has failed to do this, in large part by not clearly

identifying and describing in detail those things it alleges to be trade secrets. For example, one group of its alleged trade secrets, "surgical and nursing procedures, intake procedures, and other procedures and protocols" could potentially constitute trade secrets, but the Court would need far more information about why those items are trade secrets. With those alleged trade secrets and with nearly every other alleged trade secret identified, Island Eye fails to describe them with enough particularity to separate them from matters of general knowledge in the trade or of special knowledge of people in the trade. Many of the alleged trade secrets Plaintiff lists would be standard procedure in any office environment or any medical office environment. For example, Plaintiff claimed or implied that "various types of protocols, procedures, and information" are trade secrets but then said nothing more about them. This is not enough detail for the Court to conclude that such items reach the level of trade secrets.

Other listed items face a similar problem. Without more detail, the Court declines to accept as trade secrets "intake procedures," a "unique business model with handwritten, manually prepared medical protocols," "business practices," "methods and techniques of operation," "individualized and special techniques to further its medical care for patients and advance its unique nature" "medical protocols and procedures," and "strategies." Stated as they are, these constitute a vague list of operational know-how the Court expects that anyone in the trade would be likely to have. To reach the level of trade secret, Island Eye would need to explain with particularity why each item is a trade secret and why this information is valuable because it is unknown to others. In addition, the Court would expect more detail about efforts to keep the items secret, details about the amount of money or effort used to develop those trade secrets, and details about the ease or difficulty with which those trade secrets could be properly acquired or duplicated by others. Without more explanation, the Court views the alleged trade secrets just discussed as typical knowledge inherent to functioning as a business that most

businesses develop and acquire in order to survive rather than unique and proprietary knowledge that deserves trade secret protection.

With regard to specific medical procedures being trade secrets, the Court has seen no evidence that the medical procedures undertaken at Island Eye are so different from those performed at a typical eye clinic in Guam or elsewhere in the United States as to be considered anything other than special knowledge of people skilled in the trade. Island Eye has listed the following medical procedures as trade secrets: surgical and nursing procedures, being the sole provider of LASIK on Guam, and LASIK procedures and protocols. The Court would expect that any eye clinic on Guam or elsewhere, such as the mainland United States, would use approximately the same surgical and nursing procedures, including LASIK procedures. All ophthalmologists presumably learn similar or nearly identical medical procedures during their medical training. Island Eye has provided no evidence that it has developed medical procedures that are any different than ought to be found in any similar eye clinic. In fact, the Court would be somewhat surprised to learn that eye surgery, LASIK, and other medical procedures at Island Eye deviate appreciably from medical procedures at other eye clinics that offer similar services.

Island Eye has also argued that pricing data, including delivering prices negotiated at different rates with different parties, is a trade secret. Although pricing has at times been found to be a trade secret, Island Eye has offered no details here as to why its pricing should be so considered. Again, the burden is on Island Eye to clearly articulate why a certain thing belongs in the legal category of trade secret. See Agency Solutions.Com, LLC v. TriZetto Grp. All pricing by a business does not automatically constitute a trade secret, and it is not clear that all pricing has economic value, including the pricing to which Island Eye refers. Island Eye has submitted no evidence to show that is has a secret or improved method of making estimates or computing costs. Moreover, even if Island Eye were to demonstrate that its pricing data

qualifies as a trade secret, it has failed to show that Defendants acquired, disclosed, or used Island Eye's pricing data through improper means or that Island Eye was thereby damaged. Island Eye also has failed to state why this information is valuable because it is unknown to others, details about the amount of money or effort used to develop its pricing structures, and details about the ease or difficulty with which its pricing structures could be properly acquired or duplicated by others. Much the same could be said about Island Eye payroll and salary information. The burden is on Island Eye to clearly articulate why employee salaries and payroll details are trade secrets, including why such information has economic value, something Island Eye did not do. In addition, Island Eye must establish that Defendants acquired, disclosed, or used this salary information through improper means and that Island Eye has suffered damage as a result. Even viewing the salary and pricing information as merely confidential information, not rising to the level of a trade secret, Island Eye would have to make a detailed claim and produce evidence showing that the confidential pricing and salary information was misappropriated, disclosed, or used improperly, and that Island Eye was thereby damaged. Island Eye has failed to accomplish these tasks.

Island Eye has also listed as trade secrets client lists and customer information, insurance relationships, insurance deductible breakdowns, and all contracts of Island Eye with its medical doctors. Island Eye has failed to describe in particularity why these items reach the level of trade secret, but the Court acknowledges that these items are confidential information a business would generally not want disclosed. Still, Island Eye has failed to explain how Defendants have disclosed or misused that information. In fact, other than list those items as trade secrets, Island Eye never mentions them again. The Court would require at least some allegations or evidence about how Defendants used the client lists and exploited the knowledge about insurance and contracts with other doctors. The Court would also require Island Eye to

establish how it was thereby damaged. Island Eye seems to repeatedly rely on the idea that its former employees knew the information and because they now work at a different clinic, they have inevitably used that information in their new positions. But as previously stated, California has rejected the doctrine of inevitable disclosure. Again, that doctrine is that an employer can prevent a former employee from taking a position with a competitor by demonstrating that the new job duties will inevitably cause the employee to rely upon the former employer's trade secrets. Island Eye cannot rely on the mere fact of its former employees now working at Lombard Health to establish that those employees have therefore misappropriated trade secrets or disclosed or misused confidential information.

With regard to showing unfair competition outside the realm of trade secrets, Island Eye would be required to show that it invested substantial time, skill, or money in developing its property; that Defendants appropriated and used the property at little or no cost; that Defendants' appropriation and use of the property was without authorization or consent by Island Eye; and that Island Eye can establish that it has been injured by the Defendants' conduct. Island Eye made none of those allegations in the Complaint, focusing instead solely on the charge of unfair competition through misappropriation of trade secrets. Still, the Court will address the unfair competition arguments Island Eye raised in the Opposition. Island Eye claims that Defendants engaged in unfair competition by misappropriating its property. The property it refers to is its "business model" and "employee training." Island Eye adds no additional details about the business model or employee training. The Court would require much more information in order to determine whether these items are protected by unfair competition law.

The Court cannot provide a blanket finding that Island Eye's business model is protected simply because it is a business model, with no additional information about it. The same is true of its employee training. Island Eye also argues that it is unfair competition for Defendants to

hire Island Eye's at-will employees. The Court declines to enter such a finding in light of the settled legislative policy in favor of open competition and employee mobility. Island Eye inappropriately relies on *Reeves v. Hanlon*, a California Supreme Court case that states there is a tort based on interference with an at-will employment contract. See Reeves v. Hanlon, 95 P.3d 513, 517 (Cal. 2004). In its argument and reliance on Reeves, Island Eye has failed to add that court's additional observation that "it is not ordinarily a tort to hire the employees of another for use in the hirer's business." Id. 517, 518. The court states that this general rule is subject to one significant limitation: "This immunity against liability is not retained if unfair methods are used in interfering in such advantageous relations." Id. 518. However, here the Court does not find that Defendants used unfair methods to hire Island Eye's employees. As the Court will explain below, Defendants did not violate either the Employment Contract or the law even if they did solicit Island Eye employees to work at Lombard Health. Therefore, there is no genuine dispute as to any material fact that Defendants engaged in unfair competition with Island Eye.

If the Court were to follow Island Eye's argument with regard to its former employees, none of Island Eye's employees would ever be able to seek work at any other ophthalmology clinic, or perhaps any medical clinic at all, without being in danger of facing a trade secrets lawsuit. Furthermore, if courts generally sided with Island Eye's reasoning, it would be difficult or impossible for a doctor working at one clinic to ever establish a clinic of her own without facing a similar lawsuit. The Court views the current lawsuit in the light of the settled legislative policy in favor of open competition and employee mobility. This settled policy, alongside the law and facts just presented, prevent the Court from siding with Island Eye with regard to the trade secrets and unfair competition cause of action.

Viewing the evidence in the light most favorable to Island Eye, the Court finds that Island Eye has not presented evidence that can show Defendants have engaged in

misappropriation of trade secrets or unfair competition. The Court will therefore grant summary judgment in favor of Defendants on Island Eye's First Cause of Action for common law misappropriation of trade secrets and unfair competition.

(discussion continued below)

**Second and Third Causes of Action: Civil Conspiracy, Breach of Contract by Solicitation**

Principles of Law

The Court will address civil conspiracy and breach of contract by solicitation together because in this matter, they are highly related. The Supreme Court of Guam has stated that "[a] prima facie showing of civil conspiracy requires the plaintiff to allege in his complaint (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." Moylan v. Citizens Sec. Bank, 2015 Guam 36 ¶ 72. The court also stated that the facts must show "a group of two or more persons who agreed to a common plan ... to commit a tortious act." Id. (quoting Rockridge Trust v. Wells Fargo, N.A., 985 F.Supp.2d 1110, 1157 (N.D. Cal. 2013).

Guam law states, "Every contract, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind ... is to that extent void." 18 GCA § 88104. The only two exceptions deal with partnership agreements and the sale of a business's good will, neither applicable here. This section of Guam law derives from the California Civil Code § 1673, which was replaced in 1941 by the California Business Code § 16600. Therefore, California case law interpreting the statute is persuasive authority. See Castino v. G.C. Corp., 2010 Guam 3 ¶ 22; cf. Zurich Ins. (Guam), Inc. v. Santos, 2007 Guam 23 ¶ 7 (stating that

California case law is persuasive for a Guam law based on California law when there is no compelling reason to deviate from California's interpretation). Interpreting § 16600, the Supreme Court of California affirmed that, unless an employee noncompetition agreement falls within a statutory exception, it is invalid as a matter of law. See Edwards v. Arthur Andersen LLP, 189 P.3d 285, 288 (Cal. 2008). That court stated that § 16600 "evinces a settled legislative policy in favor of open competition and employee mobility." Id. at 291. Furthermore, § 16600 protects the citizens and ensures their right to pursue any lawful employment and enterprise of their choice and the right to engage in businesses and occupations of their choosing. Id.

In particular, non-solicitation clauses are typically void in California. Under § 16600, "covenants not to compete are void" and "[n]onsolicitation covenants typically fall within the realm of § 16600, and are treated similarly to covenants not to compete." Tivoli LLC v. Sankey, 2015 WL 12683801, at *5 (C.D. Cal. Feb. 3, 2015). California has one exception to the prohibition on covenants not to compete, and like in Guam, it would involve a person "who sells the goodwill of a business." Id. at *6. Again, such a scenario is not applicable here.

Analysis

The Court will address civil conspiracy and breach of contract by solicitation together, beginning with the Non-Solicitation Clause in the Employment Contract. The Court finds the Non-Solicitation Clause to be null and void. As explained above, covenants not to compete are generally void, and non-solicitation clauses are treated as covenants not to compete, with some exceptions that are not applicable here. The Court continues to interpret the instant case under the settled policy in favor of open competition and employee mobility. The law protects an individual's right to pursue any lawful employment and enterprise of his or her choice. The Non-Solicitation Clause conflicts with this settled law, and the indefinite duration of the Non-Solicitation Clause is particularly averse to the concept of employee mobility. Whether

Defendants solicited employees from Island Eye to work at Lombard Health is a moot point. Even if they did, such solicitation is lawful. Therefore, the Court finds that summary judgment may be granted to Defendants as to the third cause of action associated with solicitation of employees.

Because soliciting employees is lawful, Island Eye cannot demonstrate the required factors to establish a civil conspiracy with regard to solicitation under the second cause of action. To establish a civil conspiracy, Island Eye would have to prove the formation and operation of the conspiracy, including a wrongful act done pursuant to the conspiracy. However, solicitation of employees is lawful and cannot qualify as the wrongful conduct necessary to establish a civil conspiracy. In the Complaint, Island Eye also argued for a civil conspiracy centered on the wrongful act that Defendants "combined and/or conspired to conceal and retain the wrongfully taken Trade Secrets." Complaint at 11. However, that also cannot qualify as wrongful conduct because Island Eye failed to demonstrate that Defendants engaged in misappropriation of trade secrets, as explained before. In the Complaint, Island Eye also intimates as a wrongful act necessary to establish a civil conspiracy the alleged fact that Defendants conspired to breach their duty of loyalty to Island Eye. As will be explained below, Island Eye has failed to identify a disputed fact as to the claim of breach of duty of loyalty, so this also cannot be the necessary wrongful act to establish a civil conspiracy.

In the Opposition, Island Eye stated that other wrongful acts that would qualify to establish a civil conspiracy are that Defendants conspired to obtain "business models" and "highly-trained specialized employees from Island Eye." Opp'n at 15. However, as explained earlier, the Court would need far more information about the business model as property that Defendants are alleged to have taken to consider it a wrongful act. Island Eye does nothing more than state the words "business models" with no accompanying explanation. Also, Island

Eye does little more to describe its employees than label them as "highly trained," and regardless, as has been explained, employees are freely mobile in this jurisdiction and the Court found the Non-Solicitation Clause to be null and void. Therefore, the Court finds that Defendants have committed no wrongful act that could establish a valid civil conspiracy.

For the reasons explained, there is no genuine dispute as to material fact with regard to Defendants' alleged breach of contract by solicitation of Island Eye employees or Defendants' alleged civil conspiracy. The Court will therefore grant summary judgment in favor of Defendants on the Second and Third Causes of Action, civil conspiracy and breach of contract by solicitation, respectively.

### Fourth Cause of Action: Breach of Fiduciary Duties

Principles of Law

Guam courts have said little about an employee's fiduciary duty of loyalty to his or her employer, so the Court looks elsewhere for guidance. The California Court of Appeal for the Sixth District, an intermediate appellate court, stated, "[A]n employee, while employed, owes undivided loyalty to his employer." Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 414 (2007). That court also stated, "While California law does permit an employee to seek other employment and even to make some 'preparations to compete' before resigning, California law does not authorize an employee to transfer his loyalty to a competitor." Id. at 414. That court provided the elements to establish breach of a duty of loyalty: "(1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." Id. at 410. The Arizona Court of Appeals, an intermediate appellate court, stated, "Consistent with the fiduciary duty of loyalty, an employee may not, absent agreement to the contrary, statute or other authority, compete with his or her

employer concerning the subject matter of the employment." <u>Security Title Agency, Inc. v. Pope</u>, 200 P.3d 977, 989 (Ariz. Ct. App. 2008). However, similar to California, it stated, "Nevertheless, an employee may make arrangements to compete." <u>Id.</u> The U.S. District Court in Arizona also stated that preparation to compete is not a breach of fiduciary duty. However, it added that an employee must "refrain from actively competing with his employer while still employed." <u>Firetrace USA, LLC v. Jesclard</u>, 800 F. Supp. 2d 1042, 1053 (D. Ariz. 2010).

Courts from multiple states have repeatedly concluded that "mere formation of a potentially competing corporation does not breach a duty to [an] employer." <u>Mamou v. Trendwest Resorts, Inc.</u>, 165 Cal. App. 4th 686 (2008). <u>See</u> Chemfab <u>Corp. v. Integrated Liner Technologies Inc.</u>, 693 N.Y.S.2d 752, 754 (1999) (stating that an employee may secretly incorporate a competing business before departing but may not use his or her principal's time, facilities, or proprietary secrets to build the competing business); <u>Futch v. McAllister Towing of Georgetown, Inc.</u>, 518 S.E.2d 591, 597 (S.C. 1999) (stating that "merely preparing and submitting forms to create a new corporation … likely will be seen as permissible pretermination planning"); <u>Harllee v. Professional Service Industries, Inc.</u>, 619 So. 2d 298, 300 (Fla. Dist. Ct. App. 1992) (stating that it is settled law that "an employee does not violate his duty of loyalty when he merely organizes a corporation during his employment to carry on a rival business after the expiration of his employment").

<u>Analysis</u>

With regard to the Fourth Cause of Action, the Court finds that Defendants did not violate their fiduciary duty of loyalty to Island Eye. Island Eye must show the existence of a relationship giving rise to a duty of loyalty, one or more breaches of that duty, and damage proximately caused by that breach. It is undisputed that Defendants had a duty of loyalty to Island Eye while employed there and could not enter into direct competition with Island Eye,

absent agreement to the contrary. Nevertheless, the case law clarifies that Defendants were allowed to make some preparations to compete with Island Eye, even during the period of employment. Specifically, Lombard was free to create his LLC while working for Island Eye even though it would compete with Island Eye upon Lombard leaving the clinic. As stated before, California strongly favors open competition and employee mobility, and the Court will continue to interpret this case under that framework. Therefore, regardless of whether Lombard's contract with Island Eye ended on Feb. 28, 2013 or at some earlier time, the Court finds that Lombard did not violate his fiduciary duty to Plaintiff by obtaining a business license and forming Advanced Eyecare, LLC. The Court notes that Lombard would have been free to open his own clinic immediately after leaving Island Eye, but Defendants did not begin to operate their clinic until at least two years after the technical date of termination on the contract.

Lastly, even if forming the LLC could be considered a breach of fiduciary duty, Island Eye would be required to demonstrate that it suffered damage as a result. Island Eye has presented no evidence of such damage, and the Court is doubtful that evidence could be entered to show that Island Eye suffered damage as a result of Lombard merely filing paperwork to create the LLC one month before the Employment Contract ended and eight months after he saw his last patient there. The evidence presented shows that Lombard took no other actions to compete, other than actions permitted by the Employment Contract such as working for St. Lucy's, as will be explained next.

Lombard's employment contract with Island Eye allowed him to provide two weeks of clinic coverage at St. Lucy's each year in a manner that did not interfere with his duties at Island Eye. Island Eye in the Opposition has argued that Lombard's work for St. Lucy's violated the duty of loyalty because Lombard "either worked for a competitor or independently contracted with same in the name of his competing corporation while under contract with Island Eye."

Opp'n at 17. Island Eye also stated in the Opposition, "Dr. Lombard, and presumably his new LLC (1/31/2013) and business license (2/8/2013), were competing as early as February 8, 2013 at Dr. DeBenedictis, while still under contract with Island Eye." Id. Island Eye submitted the table reproduced below to show that Lombard worked for St. Lucy's during Feb. 2013.

Presumably Island Eye is suggesting that the $659.88 paid on Mar. 1, 2013 was paid by St. Lucy's to Lombard, as an attempt to confirm that Lombard must have performed work for St. Lucy's during the week or two before Mar. 1, 2013, and therefore before Feb. 28, 2013. Even assuming that the Employment Contract ended on Feb. 28, 2013, the Employment Contract

| DATE PAID | | | AMOUNT PAID | |
|---|---|---|---|---|
| 3/1/2013 | | | $ | 659.88 |
| 3/15/2013 | | | $ | 112.80 |
| 3/21/2013 | | | $ | 119.42 |
| 3/29/2013 | | | $ | 305.40 |
| 4/19/2013 | | | $ | 893.34 |
| 5/3/2013 | | | $ | 131.54 |
| 5/9/2013 | | | $ | 484.26 |
| 5/17/2013 | | | $ | 735.48 |
| 5/24/2013 | | | $ | 1,583.18 |
| 5/31/2013 | | | $ | 272.44 |

$ 5,297.74

Anthony J. Smith Decl. Ex. E.

allowed Lombard to work up to two weeks per year with St. Lucy's while under contract with Island Eye. Island Eye has suggested that once Lombard formed the LLC, his work with St. Lucy's was conducted on a contractual basis between St. Lucy's and his new LLC rather than between St. Lucy's and Lombard himself, but Island Eye showed no evidence of any kind to support this allegation. The Court declines to find that the Employment Contract would permit Lombard to work for St. Lucy's before creating the LLC but that it would not allow him to do so after. In addition, Island Eye would still be required to demonstrate damages as a result of Lombard working for St. Lucy's, something it has failed to do. In sum, although Island Eye has stated that any work by Lombard at St. Lucy's violated his fiduciary duty of loyalty, the Employment Contract nevertheless permitted him to work there for at least two weeks per year. Island Eye never alleged that Lombard provided more than the two weeks' worth of services to

St. Lucy's. Furthermore, if Island Eye wanted to bring such a claim, it would need to do so in the Complaint or in an amended complaint, not in the Opposition. Therefore, the Court finds that Lombard did not breach his fiduciary duty by working at St. Lucy's during 2013, either before or after he formed his LLC. Because the Court finds that Lombard did not breach his fiduciary duty even if the Employment Contract ended on Feb. 28, 2013, the question of when the Employment Contract ended, including whether Lombard was ambiguous about his termination date or about renegotiating the Employment Contract, is moot.

In the Complaint, Island Eye argues that the duty of loyalty required Defendants to disclose to Island Eye their intentions to leave and form a competing business. Island Eye cites no source to establish this claim, and the Court declines to conclude that an employee is under obligation to disclose to his employer his plans to open a competing business at some future day. Island Eye also states that the solicitation of employees breached the duty of loyalty. However, as discussed before, even if Defendants solicited Island Eye employees, this is lawful activity and thus could not constitute a breach of duty of loyalty.

For the reasons explained, there is no genuine dispute as to material fact with regard to Defendants' alleged breach of fiduciary duties. The Court will therefore grant summary judgment in favor of Defendant on Plaintiff's Fourth Cause of Action, breach of fiduciary duties.

**Fifth Cause of Action: Breach of Covenant of Good Faith and Fair Dealing**

Principles of Law

The Supreme Court of California has stated, "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made.* Guz v. Bechtel National Inc., 8 P.3d 1089, 1110 (Cal. 2000) (emphasis in original). The

covenant cannot "be endowed with an existence independent of its contractual underpinnings." Id. It also cannot impose on the contracting parties duties or limits beyond those incorporated in the specific terms of the agreement. Id.

Analysis

The Court has seen no evidence that Island Eye has been deprived of receiving the benefits of the Employment Contract it made with Lombard. As stated earlier, the Non-Solicitation Clause is not enforceable, so whether Lombard violated that provision is moot. Also as stated earlier, the Court finds that Lombard's work for St. Lucy's did not breach his fiduciary duty of loyalty because the Employment Contract permitted the work. Lombard apparently provided all other services to Island Eye that the Employment Contract required. Island Eye also alleges that Defendants' duty of good faith and fair dealing required them to disclose to Island Eye their plans to form a competing venture. However, again, Island Eye cites no source to establish this claim, and the Court again declines to conclude that an employee must disclose to his employer his plans to open a competing business in the future.

For the reasons explained, there is no genuine dispute as to material fact with regard to Defendants' alleged breach of the covenant of good faith and fair dealing. The Court will therefore grant summary judgment in favor of Defendant on Plaintiff's Fifth Cause of Action, breach of the covenant of good faith and fair dealing.

**CONCLUSION AND ORDER**

For the above reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.

SO ORDERED, this 25 day of June 2019.

_____
HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of:
Berman O'connor &
Mann; Luan & Wolff
Date: 6/24/19 Time: 2:30pm

Deputy Clerk Superior Court of Guam